(No. 21921.—

THE HINSDALE SANITARY DISTRICT, Appellant, *vs.* CHARLES
L. WASHBURN *et al.* Appellees.

*Opinion filed October 21, 1933—Rehearing denied Dec. 15, 1933.*

LAURENCE P. CONOVER, and WINSTON, STRAWN & SHAW, (JAMES H. CARTWRIGHT, of counsel,) for appellant.

PAUL C. MATTHEWS, ALBERT C. BOEHM, GEORGE S. MARKS, JOE A. PEARCE, PHILIP J. McKENNA, and ELLIS & HACKETT, (DANIEL S. WENTWORTH, and LEONARD F. CARMODY, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant sanitary district appeals from the judgment of the county court of DuPage county sustaining a legal objection to the confirmation of a supplemental assessment to pay an estimated deficiency in the cost of construction of an intercepting sewer. Numerous objections were filed in the proceedings, all of which were overruled except the objection that no public hearing was had on the matter of a deficiency assessment after the confirmation of the original assessment and before the contract was awarded. Since the objectors did not appeal from the judgment of the county court overruling other objections, the cause is here on a record presenting the single question whether the hearing provided for by section 59 of the Local Improvement act should have been held.

Section 59 of the Local Improvement act, (Smith's Stat. 1931, chap. 24, par. 761,) in so far as material to the question here, provides as follows: "At any time after bids have been received pursuant to the provisions of this act, 'if it shall appear to the satisfaction of the board of local improvements that the first assessment is insufficient to pay the contract price or the bonds or vouchers issued or to be issued in payment of such contract price, together with the amount required to pay the accruing interest thereon, said board shall make and file an estimate of the amount of such deficiency and thereupon a second or supplemental assessment for such estimated deficiency of the cost of the work

and interest may be made in the same manner as nearly as may be as in the first assessment, and so on until sufficient money shall have been realized to pay for such improvement and such interest: * * * *Provided, further,* that if said estimated deficiency shall exceed ten percentum of the original estimate, then no contract shall be awarded until a public hearing shall be had on said supplemental proceeding in like manner as in the original proceedings: *And, provided, further,* that no more than one (1) supplemental assessment shall be levied to meet any deficiency where said deficiency is caused by the original estimate made by the engineer, being insufficient: *And, provided, further,* that if any local improvement has heretofore been constructed or is now in process of construction or contracts have been entered into for its construction, under the direction of the board of local improvements pursuant to an ordinance providing that such improvement should be constructed and paid for by special assessment, it shall be no objection to any supplemental assessment proceeding now pending or hereafter instituted with respect to any such improvement that a public hearing on said supplemental proceeding was not had before the execution of the contract for the construction of such improvement."

The county court held that on the record made in the case such a public hearing should have been had before the letting of the original contract for the improvement, because it reasonably appeared that a deficiency in the assessment existed, amounting to more than ten per cent of the. original estimate. The court dismissed the proceeding on the ground that under the statute, when there is such a showing of deficiency, a public hearing is a condition precedent and goes to the jurisdiction of the court to confirm a supplemental assessment. This court so held in *Village of Beverly* v. *Schaerr,* 350 Ill. 178. Appellant argues that the record does not show any basis for the holding that, prior to the letting of the contract, a deficiency in excess

of ten per cent of the original estimate could have been discovered. That constitutes the question here.

The original assessment as confirmed by the court was for $436,280.06. The original estimate was for a total cost of $445,076.70, of which the cost of construction was estimated to be $400,970, engineering and supervision $20,048.50, expense and cost of making and collecting the assessment $24,058.20. The ordinance directed that bids be received upon unit prices, the number of units of each item being estimated. The low bid for the work was $413,463.30. It exceeded the original estimate of the cost of the work by three and one-tenth per cent. It was accepted, a contract entered into and the work done. It appears from the record, however, that due to unexpected underground conditions the units of work overran the estimate in certain places and underran it in others, resulting in a net overruns cost of $29,447.08. The underruns were due to better working conditions than estimated by the engineers, and the overruns were due to an unexpected and unknown subterranean peat-bed, which resulted in excessive caving, requiring much additional labor and materials and causing subsidence to an unexpected degree in pavements and sidewalks under which the sewer passed.

When the work was completed it was found that the deficiency necessary to be raised by supplemental assessment was, in additional to the $29,447.08, a deficiency in interest accruing on bonds not paid, estimated at $50,000, and the estimated expense and collection cost of the supplemental assessment $6000. These and other estimated costs brought the total estimated deficiency to $117,149.43. It is not contended by counsel for appellant that this is not in excess of ten per cent of the original estimate, but it is argued that there was no way in which it could have been known, before the contract was let, that the deficiency would be as large, but that the only deficiency which seemed apparent upon receipt of bids and before the contract was

let amounted to no more than three and one-tenth per cent of the original estimate. They say, also, that there was no ground for suspecting that the deficiency in accrued interest would arise until it became known that numerous property owners had not paid their assessments. Counsel for appellees, on the other hand, argue that it was apparent on receipt of the bids that the deficiency in the actual cost, including the estimated cost for property taken, would amount to over six per cent, and that had there been a reasonable estimate amounting to at least five per cent for deficiency in interest, a total deficiency exceeding ten per cent would have appeared.

The first question, then, is whether it was the duty of the sanitary district to estimate a reasonable amount for deficiency in interest in determining whether the total estimated deficiency exceeded ten per cent of the original estimate. Appellant's counsel say that the statute does not require that the board calculate a deficiency in interest, and as no one had any reason to presume that the property owners would default in the prompt payment of the assessments, no reason existed, at the time the bids were received, for making such a reservation. They also say that no one could foretell the unusual underground conditions which brought the final cost of construction up to nearly ten per cent of the original estimate of the construction cost. We are of the opinion that the record in this case justifies appellant's latter contention. Borings were made, but the evidence shows they did not disclose the nature of the underlying peat-bed.

In support of the first contention appellant's counsel urge that as there was no way of knowing that the property owners would not promptly pay their assessments, appellant had a right, and it was its duty under the statute, to let the contract without the expense and delay of a public hearing and without making reservation for interest in determining the per cent of the deficiency. Appellees

argue that the proviso of section 59 relative to public hearings, herein quoted, does not contemplate any exception, and that it was the duty of the board to hold such public hearing before the contract was let, and having failed to do so the court did not acquire jurisdiction of the supplemental proceedings. In support of this contention they cite sections 92, 84 and 59 of the Local Improvement act as expressly providing for an estimate of interest to be reserved, which shall be charged against the confirmed assessment. As they admit, however, sections 92 and 84 do not contemplate an estimate of deficiency in interest until after the work is completed. Therefore those sections can not enter into the question under consideration here, which is, whether, as contended by appellees, there should have been a public hearing on the matter of deficiency after the receiving of the bids and before the letting of the contract, as contemplated by that proviso of section 59. It seems clear that an amount to meet deficiency in interest could not be included as a part of the original estimate of cost or included in the original assessment, for the reason that no one would know whether there would be such a deficiency. Section 59 provides for a supplemental assessment at any time after the bids have been received, when it appears to the satisfaction of the board that the first assessment is insufficient to pay the cost of the improvement.

In determining the intention of the legislature the history of the legislation on the subject is of assistance. The provision for estimating, in a supplemental assessment, the deficiency of accrued interest on vouchers appears in section 59 for the first time in the amendment of 1905 and again in the amendment of 1919, and it is necessary to consider the original act and the changes made by amendment to determine the purpose of the changes in the act and the intention to be gathered therefrom. It is a universally adopted rule of construction of statutes that the intention of the legislature is to be gathered not only from

the language used, but also from the reason and necessity for the enactment, the evil sought to be removed and the objects and purposes sought to be attained by it. (*City of Chicago* v. *Max*, 289 Ill. 372; *Kehl* v. *Taylor*, 275 id. 346; *Stribling* v. *Prettyman*, 57 id. 371.) Section 59 was originally passed in 1897 (Laws of 1897, p. 121,) and read as follows: "If in any case the first assessment prove insufficient, a second may be made in the same manner, as nearly as may be, and so on until sufficient moneys shall have been realized to pay for such public improvement. It shall be no objection to such assessment that the prior assessment has been levied, adjudicated and collected, unless it shall appear that in such prior cause, upon proper issue made, it was specially found, in terms, that the property objected for would be benefited by said improvement no more than the amount assessed against it in such prior proceedings.. If too large a sum shall at any time be raised, the excess shall be refunded ratably to those against whom the assessment was made." Until the amendment of 1905 no provision was made for estimating a deficiency before the contract was let, and the levy of a supplemental assessment could not be made until after the work was completed and the deficiency became definitely known. (*Sheriffs* v. *City of Chicago*, 213 Ill. 620; *City of Chicago* v. *Richardson*, id. 96; *City of Chicago* v. *Noonan*, 210 id. 18.) Interest on deferred installments of special assessments is allowed by the Local Improvement act. It is presumed that such interest will meet the interest accruing on bonds issued. Prior to the letting of the contract no installment of a special assessment is due. The property owner may pay all of his assessment at one time, and if he does, no interest will accrue, (*Village of Beverly* v. *Schaerr, supra,*) and, of course, there can then be no deficiency in interest. It is clear, therefore, that a deficiency in interest, such as is contemplated in an estimate to be made for a supplemental assessment, cannot be estimated prior to the letting

of the contract, as appellees contend should have been done here. Section 59 of the Local Improvement act remained without further change until 1919, (Laws of 1919, p. 644,) when there was added the proviso that if the estimate of deficiency shall so exceed ten per cent of the original estimate, "then no contract shall be awarded until a public hearing shall be had on said supplemental proceeding."

In *City of Chicago* v. *Max, supra,* it was held the amendment of 1905, providing that a supplemental assessment could be levied before the work was done, was for the purpose of protecting the contractor, the municipality and the interest of the property owner, as under the decisions the statute as it then existed did not provide for a supplemental assessment before the work was done. Section 59 provides that when it appears to the satisfaction of the board of local improvements that the deficiency exceeds ten per cent of the original estimate, a contract shall not be let until after a public hearing is had on the supplemental proceeding in like manner as in the original proceeding. It seems clear, therefore, from the language of section 59 and the history of its enactment and changes, that a public hearing is required only in those cases where it appears, after receiving bids and before contract is let, that a deficiency amounting to more than ten per cent of the original estimate exists. Since no one can know that a deficiency in interest on deferred installments might exist, it cannot be said that such is to be included in such estimate. If such deficiency is not included the record does not sustain the contention of the appellees that facts appeared indicating that the deficiency would amount to more than ten per cent of the original estimate. This being true, we are of the opinion that the district was not required by section 59 to hold a public hearing on the matter of the supplemental assessment.

The judgment is reversed and the cause remanded, with directions to overrule the objection.

*Reversed and remanded, with directions.*