Robert L. Steller et al., Minors, by Robert L. Steller, Their Father and Next Friend, Plaintiffs-Appellants, v. Albert Miles d/b/a Saddle Club; Kalil Hazar; Jeayne Colvin d/b/a Jeayne's Tavern; Rebecca Burstein; George M. Blackburn d/b/a Gin Mill Tavern; Frank T. Schleyhahan, and Marge Schleyhahan d/b/a Frank & Marge's Tavern; Wayne Dishon d/b/a Buckhorn's Tavern, and Edward M. Wood d/b/a Wood's Tavern, Defendants-Appellees.

Gen. No. 10,155.

Third District.

May 21, 1958.

Released for publication June 7, 1958.

435

Frederick R. Pefferle, of Springfield, for appellants.

Olson and Cantrill, of Springfield, for Albert M. Miles, Kalil Hazar, Jeayne Colvin, Rebecca Burstein, Frank T. Schleyhahan, Marge Schleyhahan, and Edward M. Wood, appellees.

Moran, Klockau, McCarthy & Johnson, of Rock Island, for George M. Blackburn, and John A. Lynaugh, of Springfield (Frank G. Schubert, of counsel) for Wayne Dishon, defendants-appellees.

PRESIDING JUSTICE CARROLL delivered the opinion of the court.

This suit is brought under the Dramshop Act (Par. 135, Chap. 43, Illinois Revised Statutes, 1955) by the surviving husband and five minor children of Patricia Ann Steller, deceased, in their individual capacities, against the operators of six taverns and the owners of

the premises wherein two of said taverns are conducted.

In the complaint which contains separate counts against each of the tavern owners, it is alleged in substance that the defendants gave or sold intoxicating liquor to the decedent and Dolores M. Wasilewski, thereby causing their intoxication; that as the result of such intoxication the latter drove an automobile in which decedent was riding in such a reckless and negligent manner as to bring same into collision with the supporting beams of an overpass on the highway causing injuries to decedent from which she died on July 15, 1956; and that by reason of the death of said decedent caused by the intoxication of Dolores M. Wasilewski, the plaintiffs have been injured in their means of support to the damage of each in the sum of $20,000. Judgment in the sum of $120,000 is prayed against the defendants jointly and severally.

The defendants filed separate motions to strike and dismiss the complaint on the grounds that (1) plaintiffs are not proper parties for the reason that the action is for injuries to plaintiffs' means of support resulting from the death of Patricia Ann Steller and pursuant to the provisions of the Dramshop Act as amended, effective July 1, 1956, said action could only be maintained by the personal representative of said decedent and that (2) the amount of recovery under the 1955 amendment to the Dramshop Act, which is applicable to plaintiffs' case, is limited to a total of $20,000 for all persons injuried in their means of support resulting from the death of or injury to the person providing support. Upon a hearing, the trial court sustained these motions insofar as requiring the action to be maintained by the personal representative or administrator of Patricia Ann Steller and further requiring plaintiffs to modify the ad damnum to the aggregate of $20,000 for all persons allegedly injured in their means of support as a result of the death of

437

said Patricia Ann Steller. The plaintiffs refused to amend, elected to stand on their complaint, and judgment for defendants was entered.

On this appeal, we are concerned solely with determining the proper construction to be placed upon the 1955 amendment to the Dramshop Act which became effective July 1, 1956. This amendment, so far as pertinent, provides as follows:

"Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person. . . . An action shall lie for injuries to means of support, caused by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, resulting as aforesaid. Such action shall be brought by and in the name of the person injured or the personal representative of the deceased person, as the case may be, from whom said support was furnished, and the amount recovered in every such action shall be for the exclusive benefit of the person or persons injured in loss of support, and shall be distributed to such persons in the proportions determined by the judgment or verdict rendered in said action. Recovery under this Act for injury to the person or to the property of any person as aforesaid, shall not exceed $15,000, and recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 for each person so injured where such injury occurred prior to the effective date of this amendatory Act of 1955, and not exceeding $20,000 for each person so injured after the effective date of this amendatory Act of 1955; provided that every action hereunder shall be barred unless commenced within one year next after the cause of action accrued."

438

Comparison of the above provisions with those found in the Act prior to its amendment indicates the several changes thereby accomplished. Prior to its amendment, the pertinent provisions of the Act (the language eliminated or replaced by the amendment being in italics) were as follows:

"Every *husband, wife, child, parent, guardian, employer or other person,* who shall be injured, in person or property, *or means of support,* by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person . . . *recovery under this Act for injury to the person or to the property of any person or for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000. . . ."*

It is plaintiffs' theory that the 1955 amendment does not require that this action be brought by the personal representative of Patricia Ann Steller, deceased, and that their total aggregate recovery for loss of support resulting from her death is not limited to $20,000. Precisely, the questions suggested by plaintiffs' contentions are (1) who is the proper party plaintiff in suits for loss of support under the Dramshop Act as amended effective July 1, 1956 and (2) does the amendment place an aggregate limit upon the amount of recovery for loss of support for any one injury or death?

■ Since our reviewing courts have not previously been called upon to place an interpretation upon the amendment, we are without the aid of any direct precedent which might be applied in resolving the above questions. In such situation, this court must have recourse to and follow the general rules pertaining to the construction or interpretation of Statutes.

439

In that connection it is an established principle that in seeking to ascertain the intention of the legislature, the courts will consider not only the language used but the evil to be remedied, the object sought to be attained, the reason and necessity for the amendment at the time of its passage and the history of legislation on the particular subject involved. People v. Hughes, 357 Ill. 524; Hinsdale Sanitary Dist. v. Washburn, 354 Ill. 240; Hays v. Illinois Terminal, 363 Ill. 397.

The Illinois Statute, which has come to be commonly referred to as the Dramshop Act, was originally enacted in the year 1874 and followed closely a similar statute of the state of Ohio. Freese v. Tripp, 70 Ill. 496. It provided for no limitation on the amount of damages recoverable for injuries to property, person, or for loss of means of support. The time within which any action could be brought thereunder was not limited and it provided specifically for the recovery of exemplary damages. Except during the period that the sale of intoxicating liquors was prohibited by federal law, this 1874 statute with only minor changes therein remained in effect until 1934. Upon repeal of the National Prohibition Act effective January 31, 1934, the legislature adopted the Liquor Control Act and as a part thereof reenacted without substantial change, the Dramshop Act of 1874. As reenacted this Act remained in effect until amended by the legislature in August, 1949. This 1949 amendment eliminated the provision for the recovery of exemplary damages, placed a two-year limitation on the filing of all suits thereunder and limited the amount of recovery to $15,000. It further provided that a person injured in person or property or means of support by an intoxicated person or in consequence of the intoxication of a person had a right of action in his own name against the person or persons causing such intoxication. In other words, insofar as the right to bring an action and the limit of recovery thereunder, the amendment made no distinction be-

440

tween suits for personal injuries and property damage and those brought for loss of support regardless of the number of plaintiffs. As a result of the failure of the Act to distinguish between the two foregoing types of actions, there developed a question with respect to the proper application of the limitation of recovery in loss of support cases. One theory advanced by many lawyers was that the 1949 amendment placed a recovery limit of $15,000 on claims for loss of support for any one injury regardless of the number of claimants. A divergent theory supported by other members of the Bar, was that the amendment gave a right of action to *every* person injured in his means of support, in his own name, and that any plaintiff so injured had the right to recover up to $15,000. In 1954, the Appellate Court for the Fourth District passed upon this controversial issue in Childers v. Modglin, 2 Ill.App.2d 292. In that case, the wife and 10 children of a person alleged to have been permanently injured by an intoxicated person brought suit for loss of support in the amount of $15,000 for each plaintiff or for an aggregate sum of $165,000. Defendants moved for dismissal of the complaint or in the alternative that the ad damnum be amended to limit recovery by all plaintiffs to $15,000 in the aggregate. The trial court sustained defendants' motion and plaintiffs elected to stand by their complaint and appealed. The Appellate Court reversed the trial court and held that under the 1949 amendment to the Dramshop Act, each plaintiff claiming loss of support had a separate right to recover up to $15,000. We think the basis of the court's decision in the Childers case, as indicated by its opinion, must be regarded as being of persuasive significance in determining the questions confronting us on this appeal. In rejecting defendants' contention that the words "for loss of means of support resulting from the death or injury of any person," as found in the 1949 amendment, placed a limitation on the aggregate recovery for any one

441

death or injury, the court in the Childers case pointed out that to interpret the amendment as providing for the treatment of multiple claims in loss of support cases as a class or group with one limit on their total aggregate recovery, would lead to an absurd result; and that this was so because the amendment contained no provision for a joinder in a representative action of all persons having claims or for distribution of the proceeds of a recovery among the various claimants. The court's conclusion that the amendment did not affect each plaintiff's right to recover up to $15,000 is stated thus:

"It seems clear the amendment leaves each and every plaintiff a separate right to recover up to $15,000 for his own personal injury or property damage. To infer that, for loss of support, the various claimants, whether they sue separately or together, are now to be treated as a class or group, with one limit on their total aggregate recovery, would mean a far more radical change in the general purpose and effect of the Act than a mere limit on the amount of each person's recovery, and would present serious problems.

"In some cases the apparent right of action would be wholly nullified by such construction. As in plaintiffs' example of two families, recovery by one might abolish the right of the other, without notice, with no right of intervention provided, nor any other means of participation. The previous concept of a right of action in every person injured in his means of support would be distorted into the absurdity of a right of action with no right to recover anything, regardless of the defendants' ability to pay.

"The absence of any provision for joinder or representation of all persons having claims works strongly against the concept of a class action. Finally, even if the courts engineer some procedure to accumulate the various claimants in one suit, there is no method of distribution provided or suggested."

■■■

In considering the background of the 1955 amendment, we also think it pertinent to recall that the legislature in 1953 passed a bill providing for an individual recovery limit of $15,000, but limiting the aggregate recovery to $25,000. However, the bill contained no provision for joinder or representation of claimants and no provision for an equitable apportioning of a recovery among them. Pointing to the unfairness and confusion which would result from the failure of the Bill to include these provisions, the governor vetoed the same. (Veto Messages, 1953.)

We think the history of the Dramshop Act coupled with the decision in the Childers case, tends to sharply define the legislative motives prompting passage of the 1955 amendment. When that amendment was passed, any doubt concerning the individual right of each person injured in loss of support to bring an action and to recover up to $15,000 had been dispelled by virtue of the decision in the Childers case. In addition, the opinion of the court in the Childers case and the Veto Message of 1953 had in effect suggested the requirements which must be met by any legislation seeking to change the Dramshop Act with respect to providing for a class action and placing an aggregate limitation on recovery. It is understandable that the legislature at its 1955 session should attempt to remove the defects in the 1953 amendment which had rendered it ineffective.

■■■  With the foregoing as a background, we undertake consideration of the effect of the 1955 amendment upon the limitation of the amount of recovery which may be had in actions for loss of means of support and whether as a result of said amendment, suits for loss of support have been changed from individual to representative or class actions. In this connection, we think it appropriate to observe that by the 1955 amendment, the legislature has deleted the prior recovery limit pro-

visions of the Act and has substituted therefor two new provisions governing the amount recoverable in dramshop actions. With respect to injury to the person or property, the amendment provides "recovery under this Act for injury to the person or to the property of any person as aforesaid, shall not exceed $15,000." A separate limitation governing recovery in loss of means of support cases has been added and reads as follows:

"Recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 for each person so injured where such injury occurred prior to the effective date of this amendatory Act of 1955, and not exceeding $20,000.00 for each person so injured after the effective date of this amendatory Act of 1955 . . ."

The presence alone of these new limitation provisions in the amendment would seem to remove any doubt as to the intention of the legislature to thereby separate claims for injury to the person or property from claims for loss of means of support. Also indicative of the intention of the legislature in that respect, is the fact that the amendment changes the right of action for injuries to means of support from an individual to a representative or class action to be brought in the name of the person injured or the personal representative of the deceased person and provides for distribution of the amount recovered among the class of claimants in the proportions determined by the judgment or verdict. Thus we think the language of the amendment makes it clear that the purpose of the enactment was to revise the Dramshop Act in a manner which would remedy the defects in the 1949 amendment which are pointed out in the Childers case and which resulted in the Governor's Veto of the 1953 amendment. However, plaintiff advances the argument that under the lan-

444

guage of the 1955 amendment, separate and individual actions may still be maintained in the names of and by those injured in means of support and that the recovery in such actions is not limited to an aggregate amount. Their position is that the words "for each person so injured" refers to the person injured in means of support rather than to the person providing such support. It is a cardinal rule of statutory construction that the legislative intention is to be deduced from a consideration of the entire Statute and of every material part thereof taken and construed together. People v. Hughes, supra; Hayes v. Illinois Terminal, supra; Warner v. King, 267 Ill. 82. Accordingly, the amendment must be considered as a whole and each provision construed in connection with every other part or provision thereof.

■■■ The amendment provides that "an action shall lie for injuries to means of support . . . ." Obviously, the words "an action" can refer only to a single and not a multiple action for such injuries to means of support. The amendment then provides that "such action shall be brought by and in the name of the person injured or the personal representative of the deceased person, as the case may be, from whom said support was furnished." This latter provision establishes that the action shall be maintained by a single representative of the class of persons who qualify as those injured in their means of support. Plaintiffs' argument apparently overlooks the fact that the amendment does not provide for the bringing of an action by the persons injured in loss of support. It only provides that the amount recovered in an action shall be for their benefit. In other words the persons injured in loss of support cannot recover under the amendment. The right to recover is vested solely in the person injured, or, if he be deceased, in his personal representative. Subsequently, the amendment states

445

that "the amount recovered in every such action shall be for the exclusive benefit of the person or persons injured in their loss of support . . ." It is to be noted that the word "action" appears four times in the loss of support provision and in each instance it is used in the singular. It therefore plainly can refer only to a single action for loss of support. It is capable of no other meaning. Taking the language of the foregoing provisions together and in their plain and ordinary meaning, which this court is required to do, it definitely establishes that actions for loss of support may not be maintained by the individual or individuals suffering such loss but must be brought either by the provider of the support or by his personal representative in case such provider is deceased. The remainder of the amendment which includes the limitation provision pertaining to actions for loss of support, refers to "recovery . . . for . . . loss resulting from the death or injury of any person" and must be considered in conjunction with the above quoted provisions and when this is done, it becomes plain that the legislature intended the words "for each person so injured" to refer not to each person suffering an injury to his or her means of support but to the provider of such support whose death or injury gives rise to an action for loss of support. Such interpretation connotes a logical relation of the amendment to the purpose sought to be achieved thereby as disclosed by the history of Illinois dramshop legislation which we have previously reviewed. The words "from whom said support was furnished" must be taken to refer to both "the person injured" and "the personal representative of the deceased." This is denoted by use of the disjunctive "or" between the two phrases and by the further fact that the words "as the case may be" follow the above phrases. If it was intended to distinguish between a situation where the person furnishing support is in-

446

jured and where such person is deceased then the phrase "from whom said support was furnished" would have followed the words "the deceased person." The Act specifically designates the persons who may bring the action which it creates and those persons are either the injured provider of support or his personal representative. The express mention in the Act of the persons authorized to bring an action thereunder impliedly excludes all other persons, Howlett v. Doglio, 402 Ill. 311.

Adoption of plaintiffs' theory would render the amendment meaningless with respect to actions for loss of support. If, as plaintiffs argue, each of them is entitled to recover up to $20,000 then the only change accomplished by the amendment was the increase of the limit of recovery from $15,000 as fixed by the 1949 amendment to $20,000. If the effect of the amendment was, as plaintiffs contend, only to increase the amount recoverable by each plaintiff this could have been accomplished by merely substituting the numerals $20,000 in the 1955 amendment in place of the $15,000 in the 1949 amendment.

■ Consideration of the language of the amendment can leave no doubt as to the intention of the legislature to make substantial changes in procedure in actions for loss of support under the Dramshop Act. Were this court to otherwise conclude it would be assuming that in writing into the amendment the provisions representing such changes the legislators engaged in a vain and useless thing. However, in construing a statute such presumption is not permitted. As the court stated in Pliakos v. Liquor Control Com., 11 Ill.2d 456:

"It is well established that in the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to be presumed to have done a vain

thing in the enactment of a statute. Hence, it is a general principle, embodied in the maxim, *'ut res magis valeat quam pereat,'* that the courts should, if reasonably possible to do so without violence to the spirit and language of an act, so interpret the statute, or the provision being construed, as to give it efficient operation and effect as a whole. An interpretation should, if possible, be avoided, under which the statute or provision being construed is defeated, or as otherwise expressed, nullified, destroyed, emasculated, repealed, explained away, or rendered insignificant, meaningless, inoperative, or nugatory. 50 Am. Jur. Statutes, Sec. 357."

It would further appear that the construction for which plaintiffs contend creates a direct conflict between the provision of the amendment providing for a class action on behalf of all plaintiffs and that providing for distribution of the amount recovered among the persons injured in their means of support. Such conflict does not arise and the provisions thereof are rendered harmonious when the amendment is construed with due regard for the general purpose sought to be achieved thereby and which is reflected by its general composition.

█ Undoubtedly, the language of the recovery limitation provision could have been improved upon, but regardless of its short-comings, the intent of the law makers is not thereby obscured to the extent that the same is not discernible. We think consideration of the whole amendment clearly discloses that in enacting the same, it was the purpose and intent of the legislature to establish a method of uniform procedure in loss of support cases and to place an aggregate limitation of $20,000 upon recovery therein. This was accomplished by segregating loss of support actions and dealing with the same separate and apart from injuries to the person or property by changing the right of action for

injuries to means of support from an individual to a class action and by providing for distribution of any amount recovered among the members of the claimant class.

Accordingly, we have reached the conclusion that this action could not be maintained by plaintiffs, and the judgment of the trial court is therefore affirmed.

Affirmed.