Pauline Childers et al., Plaintiffs-Appellants, v. Bess Modglin et al., Defendants-Appellees.

Term No. 54–F–4.

Opinion filed April 30, 1954. Released for publication June 3, 1954.

HAROLD N. LINGLE, of Anna, JOHN PAUL DAVIS, of Jonesboro, OMER W. JONES, JR., of Murphysboro, and ELMER J. MEDLIN, of Carbondale, for appellants.

FRANKLIN & GARRISON, of Marion, and JONES, OTTESEN & FLEMING, of Belleville, for appellees.

MR. PRESIDING JUSTICE SCHEINEMAN delivered the opinion of the court.

The plaintiffs brought this suit under the Dramshop Act, they being the wife and ten children of Floyd Childers who is alleged to have been permanently injured by an intoxicated person. The latter's intoxication is alleged to have been caused by liquor obtained in the business establishments of the several defendants.

The theory of the complaint was that the plaintiffs were entitled to recover the full amount of their respective damages for loss of support, up to a maximum of $15,000 for each plaintiff. The defendants moved that the complaint be dismissed or, in the alternative,

amended to apply the limit of $15,000 to the aggregate recovery for all plaintiffs. The plaintiffs refused to amend, elected to stand by their complaint, and judgment was entered for defendants.

On this appeal, no question of procedure is raised, the only point argued by either side is the proper construction of paragraph 135, chapter 43, Ill. Rev. St. [Jones Ill. Stats. Ann. 68.042], which, so far as pertinent, is as follows:

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person . . . recovery under this Act for injury to the person or to the property of any person or for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 . . ."

In support of their position, plaintiffs emphasize that the statute gives a right of action to *every* person injured in his means of support, in his own name, and that "every" is defined by Webster as "Each (one), without exception, of a group." Also, plaintiffs give examples of the difficulty with defendants' position, such as the case of a divorced man with two families dependent upon him: if one family first secures the limit suggested by the defense, the other would be wholly barred. Plaintiffs also cite precedents under the statute prior to the amendment, which are hereafter mentioned.

Defendants place their emphasis on the wording of the amendment of 1949 which added the limitation provision, and removed the former allowance of ex-

emplary damages. They divide the sentence into two parts and conclude that injury to person or property may permit recovery of the maximum by each plaintiff, but that the words "for loss of means of support resulting from the death or injury of any person" places a limit on the aggregate recovery for any one death or injury, regardless of the number of plaintiffs.

Authorities are cited that the statute should be strictly construed, and therefore has been held to have no extraterritorial effect, not to permit double recovery under this and the Injuries Act, for the same transaction.

The limitation added by amendment in 1949 has not previously been construed by a court of review in this State. However, it is a matter of common knowledge that it has caused widespread discussion, and both of the conflicting views herein expressed have found support in our bench and bar. It can hardly be said that either view is so clearly correct that the other merits no consideration.

The amendment reads in part "recovery . . . for loss of means of support resulting from the death or injury of any person shall not exceed $15,000." (Words "as aforesaid" omitted temporarily.) It does not say "recovery by each person" is so limited. Hence, defendants present the reasonable argument that the total recovery by all persons for this type of injury shall not aggregate more than the limit.

On the other hand, the wording may be merely a description of one of the three types of injury for which recovery is allowed. In *Howlett v. Doglio,* 402 Ill. 311, the court held that this statute does not authorize recovery for every type of injury, but only for injuries "in person, or property or means of support." This opinion was released in January 1949, and thereby decided that the original Act created three, and only three, distinct types of recovery.

295

■ During the ensuing session, the legislature added the provision that "recovery under this Act . . . *as aforesaid,* shall not exceed . . . " etc. The emphasis is added, because the words "as aforesaid" tend to negative any intent to alter (except as to amount) the three enumerated types of right of action given to "Every husband, wife, child," etc. The words may be regarded as a short-cut method of applying the new limit to the right of every person previously specified, without the necessity of repetition, and of applying it in the same manner to each of the three kinds of rights, which are repeated.

■ It seems clear the amendment leaves each and every plaintiff a separate right to recover up to $15,000 for his own personal injury or property damage. To infer that, for loss of support, the various claimants, whether they sue separately or together, are now to be treated as a class or group, with one limit on their total aggregate recovery, would mean a far more radical change in the general purpose and effect of the Act than a mere limit on the amount of each person's recovery, and would present serious problems.

In some cases the apparent right of action would be wholly nullified by such construction. As in plaintiffs' example of two families, recovery by one might abolish the right of the other, without notice, with no right of intervention provided, nor any other means of participation. The previous concept of a right of action in every person injured in his means of support would be distorted into the absurdity of a right of action with no right to recover anything, regardless of the defendants' ability to pay.

The absence of any provision for joinder or representation of all persons having claims works strongly against the concept of a class action. Finally, even if the courts engineer some procedure to accumulate the

various claimants in one suit, there is no method of distribution provided or suggested.

■ ■ The question of distribution presents its own series of problems. Defendants suggest that, the limit being applied to the class as a whole, distribution should be in equal shares per capita. There is nothing in the statute authorizing the court or jury to do any such thing. The legislature might regard such method as reasonable, but this is not the only possibility. Under the Injuries Act [Ill. Rev. Stats. 1953, ch. 70, § 2; Jones Ill. Stats. Ann. 38.02], distribution is according to the law of descent. In a case of multiple plaintiffs under the Dramshop Act, suppose the proof shows partial loss of support by several next of kin, and total loss by the widow or wife; should division be in proportion to loss, or still per capita? The statute is silent on this subject, again indicating the independence of each right.

■ There is nothing in the statute to indicate that the right of recovery depends in any degree upon the number of defendants. What would happen under defendants' theory, if a widow sued one dramshop, and the children sued another? Obviously, the courts would again be called upon to interpolate by construction, rules which are entirely omitted from the legislation.

As to prior decisions on this statute, plaintiffs cite *Stecher v. People for Use of Morton,* 217 Ill. 348, wherein the children of one Morton brought a dramshop action. There had been a prior unsuccessful suit by their mother alone, which was pleaded in bar. The court held it was no bar, because the rights of action were separate and distinct and in no wise dependent upon each other.

■ Also cited is the decision of this court in *Glasco v. Fakes,* 143 Ill. App. 378, wherein the *Stecher* case was cited and this comment made: "The fact that the

statute says every child shall have a right of action, indicates that the right is several or individual as to each child, which shall be injured in person, property or means of support." These decisions, being prior to the amendment, are not controlling, but if the legislature intended to change their effect, and the apparent effect of the statute, it seems that the intent would have been clearly and unequivocally expressed.

The limitation is simple in application when there is but one plaintiff. It is only when there are multiple plaintiffs, in the same or different suits, that a difficulty arises. It may be that these other situations were not given consideration in the drafting of the amendment.

There may be something of interest in the fact that the 1953 legislature passed a bill for another amendment, which would have kept the individual limit in such cases at $15,000, but would have added another limit of $25,000 to the aggregate recovery. There was still no provision for joinder or representation, and no hint of any system of distribution. The bill was vetoed by the governor, who gave as his reasons the impracticability of such a system, and the mischievous results to be foreseen. Veto Messages, 1953.

In summary, the 1949 amendment did not change the wording creating separate rights of action; on the contrary, it listed the three types of injuries as defined in the *Doglio* case, followed by the words "as aforesaid." At least, there is presented an inference the rights of action in the former statute, and as construed by the courts, were left intact. Yet, to apply the limit to a group of plaintiffs is inconsistent with such an inference, for the rights would be curtailed, not only by a fixed limit, but a variable limit, depending on the number of plaintiffs; and as previously noted, in some cases the right would be a nullity. And it is clear that adoption of such a construction would create a number of

298

problems which could only be solved by judicial legislation to fill the voids in the statute.

This is not to say that the presence of the words "as aforesaid" is any more conclusive than the absence of the repeated use of the words "every person," nor that the other considerations make the interpretation simple and clear. But we conclude that the application of the amendment in a case of this kind, is ambiguous.

██ Such a result is not unusual, for it is extremely difficult to draft legislation so that it will work smoothly in all situations, some of which may not have occurred to the minds of the proponents. It is a common experience for the courts to find that, what appears to be a simple statutory provision, turns out to be ambiguous in some situations. The principle often announced is that, if the language employed in a statute admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to the absurd result should be avoided. *Jones v. Pebler,* 371 Ill. 309; *People v. Jerry,* 377 Ill. 493; *Inter-State Water Co. v. City of Danville,* 379 Ill. 41; *Scott v. Freeport Motor Casualty Co.,* 379 Ill. 155.

By applying the limit in this case to each cause of action separately, all parts of the statute are consistent, the application is definite and certain, it applies equally to all persons, and makes the statute practical and workable. To apply the limit to a group of persons produces inconsistency within the statute itself, leads to consequences at times absurd, results in a variety of inequalities, and is wholly impractical in its operation without extensive tinkering; in fact, it would require the courts to fill in a number of voids which would normally be regulated by statute, if any such system had been comtemplated.

■ Under these conditions we reject the objectionable alternative, and hold that the limit of recovery applies to each separate right of action as it previously existed. Any plaintiff who is injured within the terms of the statute has the right to recover up to, but not exceeding, $15,000, regardless of the existence of other claims, established or establishable, and regardless of the number of defendants sued or suable.

■ Of course, this does not decide how much the plaintiffs may actually recover. The limit of $15,000 is a maximum, not a minimum. How much any plaintiff is individually entitled to recover as damages remains subject to the rules of evidence, and an excessive verdict for any plaintiff has no better standing under the amendment than it would have if no maximum were specified.

The judgment of the circuit court is reversed and the cause remanded with directions to overrule the defendants' motion, and to proceed according to the usual practice.

*Reversed and remanded.*

BARDENS and CULBERTSON, JJ., concur.