HAROLD HETTERMANN *et al.*, Co-Executors of the Estate of Edwin H. Hettermann, Plaintiffs and Counterdefendants-Appellees, *v.* NANCY WEINGART, Defendant and Counterplaintiff-Appellant.

Second District   No. 83—181

Opinion filed December 29, 1983.

Peter D. Michling, of Weisz & Weisz, of Woodstock, for appellant.

Joseph P. Condon, of Condon and Zopp, Ltd., of Crystal Lake, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Nancy Weingart, defendant and counterplaintiff, appeals from a judgment of the circuit court of McHenry County in favor of Harold Hettermann and Robert Hettermann as co-executors of their father's estate, plaintiffs and counterdefendants, which gave them possession of certain real estate sold to Weingart by an installment contract after they declared that Weingart forfeited the property by failing to pay two monthly installments and certain insurance premiums. The judgment further denied Weingart's countercomplaint to rescind the contract for failure by the sellers, Hettermanns' parents, to comply with "An Act relating to installment contracts to sell dwelling structures" (Ill. Rev. Stat. 1981, ch. 29, pars. 8.21 through 8.22) (Act),

finding Weingart did not exercise the statutory right to avoid a contract which does not comply with this Act until after Hettermanns declared the forfeiture and that the Act did not apply in the instant case because the main purpose of the contract in question was the sale of a restaurant and tavern and not the sale of the apartment on the premises. Weingart argues on appeal that the trial court erred in finding that the Act did not apply in the instant case and that Hettermanns' declaration of forfeiture did not deprive her of her right to avoid the contract.

The installment contract involved in this action, entitled "Purchase Agreement—Real Estate, Business and Personal Property" and executed by Weingart and Edwin Hettermann and his wife Dorothy, who predeceased him, provided for the sale of specified property in McHenry County in which the sellers owned and operated "Hettermann's Restaurant and Tavern" to the defendant for $160,000. Weingart agreed to pay $35,000 of this price upon receiving evidence of Hettermanns' good title to the property, and the remainder in subsequent monthly installments of $1,049 due on the 15th day of each month until November 15, 1987, with the remaining amount due on December 15, 1987. Weingart further agreed to maintain proper dramshop, public liability, hazard, and casualty insurance and to furnish to the Hettermanns satisfactory evidence of compliance with this requirement. The agreement apportioned $140,000 of the purchase price to the value of the real estate improvement, $10,000 of the purchase price to the value of the land, and $10,000 of the purchase price to the value of the equipment and personal property located on the premises. Weingart agreed not to operate the business under its past name, and the Hettermanns agreed not to open a similar business within a 15-mile radius for five years. The contract was contingent upon Weingart's ability to procure necessary licenses to sell liquor and to operate a restaurant on the premises. Paragraph 17 of the agreement mentions that the structure contains a residential area in which the Hettermanns were allowed to continue to reside for a specified period of time at a specified rent. No provisions were included regarding forfeiture if Weingart defaulted on her obligations.

The supplemental record on appeal consists of various notices delivered by Hettermanns to Weingart in which they notify her of their intent to bring a detainer action for her failure either to comply with her obligation to furnish certificates of insurance evidencing her compliance with that requirement or to make monthly installment payments. On April 28, 1982, they delivered to Weingart such a notice for her failure to pay her March and April installment payments and

for her failure to reimburse them for their payment of insurance premiums on the property. On June 2, 1982, Hettermanns served Weingart with a demand for possession and on June 7 filed with the McHenry County recorder a declaration of forfeiture for Weingart's failure to cure her default within 30 days. Another demand for possession was served upon Weingart on June 21, 1982.

On June 21, 1982, Hettermanns filed a complaint in forcible entry and detainer (Ill. Rev. Stat. 1981, ch. 110, par. 9—101 *et seq.*). Weingart answered denying that she was unlawfully withholding possession of the described property from Hettermanns and filed a countercomplaint for rescission alleging that on July 10, 1982, she elected to avoid the installment contract as evidenced by exhibit B attached to her countercomplaint (a notice to plaintiffs of her election to rescind), on the basis that the sellers failed to comply with the Act in that they did not attach a certificate of compliance or an express written warranty that they did not receive any notice of a dwelling code violation for the premises.

Hettermanns subsequently amended their complaint to include a request for rent. They also answered Weingart's countercomplaint by stating that the Act did not apply in the instant case because the installment contract dealt with the sale of a business and that Weingart's election to rescind the contract was invalid since she made the election after their declaration of forfeiture.

Evidence adduced at a hearing on the complaint and countercomplaint established that the sellers had resided on the premises at certain points of time; that there was an apartment on the premises; that the fair cash rental value of the premises when the contract was executed was $1,400 per month, and that the current fair cash rental value of the premises, excluding the residence, was $1,000 per month; that the total amount due from Weingart for the two unpaid installment payments and unpaid insurance premiums totaled $13,362.48; that Weingart intended to operate a restaurant and tavern on the premises; that the apartment was not in violation of any building codes; that Weingart moved into the apartment in December 1977 with her three sons; and that she did not know that she had a right to elect to avoid the contract until June 1982. In closing arguments, Hettermanns argued that the contract concerned the sale of a restaurant and tavern, not a dwelling, and that Weingart's election to avoid the contract occurred after Hettermanns had declared the forfeiture and after Weingart had ratified the contract by making monthly payments. Weingart argued that the Act applied because the premises contained a dwelling unit and that no forfeiture can exist until a court

so determines.

The trial court entered judgment finding that the substance of the transaction was the sale of a restaurant and tavern and that the residential portion was incidental to that purpose, and that Weingart elected to rescind the contract after the declaration of forfeiture. The court granted possession in favor of Hettermanns but stayed the order for 30 days, entered judgment for Hettermanns in the amount of $13,362.48 plus costs, and entered judgment for Hettermanns against Weingart on the countercomplaint. Weingart's appeal raises two issues:

> 1. Whether an installment contract seller may declare a forfeiture of the contract where the contract does not contain a provision granting the seller that remedy.
>
> 2. Whether "An Act relating to installment contracts to sell dwelling structures" applied to a transaction where the main purpose of that transaction was the sale of a restaurant and tavern and the incidental purpose was the sale of a dwelling unit.

Weingart contends that her election to rescind the contract, while subsequent to the Hettermanns' declaration of forfeiture, cannot be waived by Hettermanns or herself and controls the parties' relationship so that she is entitled to restitution of the amount of money she has paid toward the purchase of the premises reduced by an amount representing the fair market rental value of the premises for the period of time she occupied them. In so arguing, she claims that she acted swiftly to avoid the contract after she became aware of her right to do so in June 1982, and urges that this right should not be denied merely because Hettermanns declared a forfeiture prior to her election. She further contends that even if a declaration of a forfeiture could deny her the ability to avoid the contract because no contract would exist after such declaration, the declaration in the instant case was not sufficient because the contract itself did not contain a forfeiture provision and thus whether a forfeiture declaration is proper can never be "clearly and unequivocally" shown until so held by a court. She further urges that since Hettermanns accepted late payments from 1981 to early 1982, they needed to provide her with new notice prior to declaring forfeiture and that no notice of the impending forfeiture action had been given to her. She thus concludes that a contract existed at the time she elected to avoid it.

Hettermanns respond that Weingart has waived the issue of the subsequent effect of their acceptance of late installment payments by not raising this issue at trial. They further argue that even if she had

the right to avoid the contract, such avoidance would only affect future obligations under the contract, not past ones, and that her continued payment under the contract ratified it, in essence arguing that to the extent Weingart performed, the contract was validated. Finally, they argue that any avoidance of the contract would only affect the portion of the contract concerning the apartment area.

Weingart points out that the instant contract does not contain a forfeiture clause. She then argues that the absence of such a clause means that "the right to declare forfeiture can never be clearly and equivocably shown." While no Illinois case has expressly held that a party can declare a forfeiture only where the contract authorizes such a right, that rule, which other jurisdictions have adopted (see, *e.g., Westercamp v. Smith* (1948), 239 Iowa 705, 714, 31 N.W.2d 347, 352; see generally 91 C.J.S. *Vendor & Purchaser* sec. 97(f) (1955)), may be inferred from case law.

In *Lovins v. Kelley* (1960), 19 Ill. 2d 25, 28, the supreme court explained with respect to forfeiture clauses that "[c]ourts of equity recognize the right of competent parties to incorporate nonpayment forfeiture provisions in their contracts." The court continued in *Eade v. Brownlee* (1963), 29 Ill. 2d 214, 219, that therefore, although "[c]ourts of equity abhor forfeitures *** where a forfeiture has been declared in the manner prescribed by the parties to a contract the court will give effect to the contract." (See also *Kingsley v. Roeder* (1954), 2 Ill. 2d 131, 137; *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 59; *666 North Orleans, Inc. v. Kors* (1973), 11 Ill. App. 3d 676, 679.) In *Allabastro v. Wheaton National Bank* (1979), 77 Ill. App. 3d 359, 364, this court explained the law applicable to forfeitures:

> "The law applicable to the question whether the contract expressly provides for forfeiture is not in serious dispute. The contract language upon which a forfeiture right is grounded must be strictly and narrowly construed. [Citation.] A forfeiture provision will be construed against the party seeking to enforce it. [Citation.] If the contract language is subject to a construction which will prevent a forfeiture, that construction must be applied, with ambiguous words construed most strongly against the party who executed the contract. [Citation.]" (See also *Ferrara v. Collins* (1983), 119 Ill. App. 3d 819, 824.)

In *Kirkpatrick v. Petreikis* (1976), 44 Ill. App. 3d 575, 577, finally, the court stated that "[f]orfeiture may be allowed where there is a valid contract containing a forfeiture clause and the buyer is found actually in default."

■ The above language makes it clear that a party may declare a forfeiture only where the contract expressly grants that right. Further support for that rule may be found in *Horween v. Dubner* (1965), 68 Ill. App. 2d 309, 317, where the appellate court affirmed the trial court's refusal to declare that the defendant had forfeited an easement because the terms of the easement did not provide for a forfeiture if any violation occurred.

■ We conclude that the Hettermanns did not have a right to declare a forfeiture.

The remaining issue is whether "An Act relating to installment contracts to sell dwelling structures" applies to a transaction where the main purpose of that transaction was the sale of a restaurant and tavern and the incidental purpose was the sale of a dwelling unit. According to section 2 of the Act, effective August 11, 1967:

> "After the effective date of this Act, any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice. The requirements of this section cannot be waived by the buyer or seller." (Ill. Rev. Stat. 1981, ch. 29, par. 8.22.)

The Act defines a dwelling structure to be:

> "any private home or residence, or any building or structure to be occupied or resided in by 12 or less family units. *** Dwelling structures do not include public or private hospitals, public or private school dormitories, fraternity houses, convents, monasteries, mental institutions, penal institutions, seminaries, State-licensed nursing homes or shelter care homes, or any federal, State, county or municipal institution or home." Ill. Rev. Stat. 1981, ch. 29, par. 8.21(b).

The trial court found that the above definition did not include property containing an apartment sold through an installment contract where the primary purpose of the contract was to sell a restaurant and tavern. An analysis of rules of statutory interpretation ap-

plied to the instant Act as related to the present installment contract requires us to determine that the trial court erred in making this finding.

The first canon of statutory interpretation is to ascertain and give effect to the legislative intent as expressed in the statute. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46.) The legislative intent usually appears from a consideration of the statute's language which affords the best means of its exposition. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475; *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194.) If the legislative intent can be ascertained from the language of the statute, the language prevails and will be given effect; a court may not declare that the legislature did not mean what the plain language of the statute imports. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) In ascertaining the legislature's intent, a court must consider a statute in its entirety and note the subject it addresses and the legislature's apparent objective in enacting it. (*Gill v. Miller* (1982), 94 Ill. 2d 52, 56.) Although statutes in derogation of the common law are to be strictly construed in favor of the person sought to be subjected to their operation (*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 220), remedial legislation should be construed liberally to effect its purposes (*S. N. Nielsen Co. v. Public Building Com.* (1980), 81 Ill. 2d 290, 298).

The definition of dwelling structures in the instant Act does not exclude a structure in which only one portion of it is to be resided in by a family unit. Literally, the property in the instant case is a building to be occupied or resided in by 12 or less family units. Since the statutory definition contains exclusions of what do not constitute dwelling structures, this expression of certain exceptions must be construed as an exclusion of all other exceptions. See *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 199; see also *In re Sneed* (1977), 48 Ill. App. 3d 364, 368.

The legislative intent behind the enactment of the statute further supports this conclusion. In *Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 116, the appellate court found that the purpose of this statute is "to furnish information for the protection of the buyer as to the condition of the property he is purchasing without requiring that purchaser to search the records or cause an inspection of the house for possible violations." In *Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 155, the appellate court expanded on this articulation of the purpose of the statute where it explained that installment contract sales inherently are susceptible to a greater degree of seller overreach than are

traditional real estate sales, thus requiring greater protection for the buyer. In so finding, the court advanced a liberal construction of the Act so as to protect the buyer in that case. (113 Ill. App. 3d 151, 155.) In the instant case, Weingart is in the same position as a purchase of a building containing only a dwelling unit as in *Mack*. Therefore, exempting the instant contract from the protection afforded by this Act would be unfair and defeat the legislative intent.

Furthermore, logic supports the conclusion that the Act applies in the instant case. Clearly, the Act would apply if a purchaser bought a building containing dwelling units for the purpose of renting the units to others. Since the building would have been purchased for business purposes as in the instant case, no reason exists why the purchasers should be treated differently.

Hettermanns argue that the title of the Act excludes the Act's coverage of the instant contract. While resort may be made to the titles of an act to determine legislative intent where the act's meaning is doubtful (*People v. Malone* (1979), 71 Ill. App. 3d 231, 232; *Merchants National Bank v. Olson* (1975), 27 Ill. App. 3d 432, 433), the title here does not aid in the interpretation because the Act's own definition of "dwelling structures" is at issue.

To sum up, we find that Hettermanns had no right to declare a forfeiture; a valid contract existed at the time that Weingart sought to avoid it. Furthermore, we find that the Act applies to this installment contract, and Weingart had the right to avoid the contract. Consequently, this cause is reversed and remanded to the trial court with directions that the trial court rescind the contract and order Hettermanns to refund the money paid by Weingart pursuant to the contract reduced by an amount representing the fair cash rental value of the property for the period of time during which Weingart had possession, thus restoring the parties to their original status.

The judgment of the circuit court of McHenry County is reversed and remanded with directions.

Reversed and remanded with directions.

HOPF and NASH, JJ., concur.