CARLA STEWART, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ryder Truck Lines, Inc., *et al.*, Appellees).

Fourth District (Industrial Commission Division)   No. 4—84—0889WC

Opinion filed August 7, 1985.

WEBBER, P.J., dissenting.

Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville, for appellant.

Manion, Janov, Edgar, Devens & Fahey, Ltd., of Danville (Charles J. Devens, of counsel), for appellee Nancy Roberts.

John B. Jenkins, of Gunn & Hickman, P.C., of Danville, for appellee Ryder Truck Lines, Inc.

JUSTICE LINDBERG delivered the opinion of the court:

The single issue to be resolved by this appeal is whether the two-year lump sum provisions found in section 7(a) of the Workers' Com-

pensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a)) apply to a decedent's remarried widow where decedent left children surviving him who were entitled to workers' compensation benefits at the time of his widow's remarriage even though the children were from decedent's previous marriage. We conclude decedent's remarried widow is not affected by the lump sum remarriage provisions of section 7(a).

Dale K. Stewart died on July 31, 1981, as a result of injuries he sustained while working for Ryder Truck Lines, Inc. A claim was made under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*). The arbitrator found that the decedent was survived by a wife and four minor children born to the decedent and his former wife, Nancy K. Roberts. Those children were Dale Stewart, Jr., born December 28, 1964; Amanda Kay Stewart, born January 14, 1966; Charles Stewart, born January 1, 1967; and Eric Stewart, born July 25, 1970. The arbitration decision ordered the sum of $212.51 per week to be paid to Nancy Roberts for the use of the children. Decedent's widow, Carla J. Stewart, was to collect $53.13 per week until 20 years had passed or until $250,000 had been paid, whichever was greater. In the event of the widow's death, the children would continue receiving payments until the youngest child reached the age of 18, except as otherwise statutorily mandated in the case of enrollment in an accredited educational institution or the physical or mental incapacity of the child. This arbitration decision was entered on January 27, 1982.

On June 3, 1983, while there were children of the decedent surviving and those children were entitled to compensation benefits under the Workers' Compensation Act, Carla J. Stewart, widow of Dale K. Stewart, remarried. On June 28, 1984, the Industrial Commission addressed the issue of whether Carla J. Stewart's remarriage affected her right to receive weekly compensation benefits. The Commission found that: (1) the decedent's four children were in the custody of their natural mother, Nancy K. Roberts, who was divorced from the decedent on February 14, 1972; (2) the decedent married Carla J. Stewart on June 22, 1981, and no children were born of that marriage; (3) decedent died as a result of injuries he sustained in the course of employment; and (4) Carla J. Stewart remarried on June 3, 1983. The Commission concluded that Carla J. Stewart's remarriage did not affect her right to weekly benefits, since section 7(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a)) provides only that if a widow remarries, where the decedent did not leave surviving any child or children, who, at the time of such remarriage, are entitled to compensation under the Workers' Compensation Act, the

widow is to take a lump sum of two year's compensation benefits, and her rights are then extinguished. Finding that the decedent's children, although not children of Carla J. Stewart, were still entitled to compensation benefits as of June 3, 1983, the Commission determined that Carla J. Stewart's rights were not affected by this provision. The Commission, *inter alia*, ordered the sum of $212.51 per week to be paid to Nancy Roberts for the use of the children. Decedent's widow, Carla J. Stewart, was to collect $53.13 per week for six years from the date of decedent's death or until July 30, 1987, but commencing December 28, 1982. Thereafter she would receive $132.82 per week until July 25, 1988 (the 18th birthday of the youngest child), whereupon she would receive $265.64 per week until a total of $250,000 has been paid pursuant to section 7(a) of the Act.

Carla J. Stewart petitioned to the circuit court for a review of all questions of law and fact presented in the record and a review of the determination of the Industrial Commission, as entered on June 28, 1984. Specifically, Stewart claimed that certain errors appeared in the decision and needed to be corrected. The circuit court agreed with petitioner that there were errors in the Commission's decision, but the circuit court also found that Carla Stewart was entitled only to a lump sum payment equal to two year's compensation benefits. Carla Stewart filed a timely notice of appeal.

The trial court determined that Carla J. Stewart, widow of Dale K. Stewart, was no longer entitled to weekly compensation benefits due to her remarriage. This determination was based on the court's interpretation of section 7(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a)). That statute, in part, provides:

"In the event of the remarriage of a widow or widower, where the decedent did not leave surviving any child or children who, at the time of such remarriage, are entitled to compensation benefits under this Act, the surviving spouse shall be paid a lump sum equal to two year's compensation benefits and all further rights of such widow or widower shall be extinguished."

The trial court specifically found that the Commission erred in its determination that section 7(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a)) did not apply. The trial court reasoned that since the children who were entitled to receive compensation benefits on the date of Carla Stewart's remarriage were the children of the decedent by a former wife, and since Carla Stewart had no children by the decedent, she was entitled only to a lump sum payment equal to two year's compensation benefits. The trial court

reversed the Commission's order which allowed petitioner to continue receiving weekly compensation benefits for 20 years or until $250,000 had been paid, whichever was greater. The Commission, in its order, had indicated that the result could be deemed anomalous, but it nevertheless believed that such a result was mandated by the clear language of the statute and by the Illinois Supreme Court's interpretation of that portion of the statute in *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181.

The portion of section 7(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.7) that deals with remarriage of the widow specifically states that the widow is limited to a lump sum payment where the decedent did not leave surviving any child or children who were at the time of the widow's remarriage entitled to receive compensation benefits. The statute also provides that for purposes of the Workers' Compensation Act, a "child" means any child whom the decedent left surviving, "including a posthumous child, a child legally adopted, a child whom the deceased employee was legally obligated to support or a child to whom the deceased employee stood in *loco parentis*." (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a).) The parties do not dispute that the four children of the decedent, Dale K. Stewart, qualify for compensation benefits under the provisions of this Act.

To be resolved is whether the trial court erred in finding that Carla J. Stewart was subject to the terms of the statute limiting her benefits upon remarriage to a lump sum payment equal to two year's compensation benefits. The plain language of the statute indicates that Carla Stewart was not subject to the limits of a lump sum payment, and the trial court erred in so finding.

The first canon of statutory interpretation is to ascertain and give effect to the legislative intent as expressed in the statute. If that intent can be ascertained from the language, that language will be given effect. (*Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690, 458 N.E.2d 616, 621.) Despite the clear language of the statute indicating that the lump sum settlement provision applies only if the decedent has no surviving children still receiving benefits at the time the widow remarries, respondents suggest that the statute must be interpreted to mean that the lump sum settlement applies if there are no children of the marriage of the decedent and the widow who are receiving benefits at the time of remarriage. The respondents argue that to apply the statute in any other manner would be to defeat the legislative purpose and to grant the widow a windfall. It is obvious, according to respondents, that the purpose of the statute's limitation of a lump sum settlement upon remarriage is to restrict the compen-

sation benefits of a widow who is not responsible for the care of decedent's minor children.

Respondent's argument that the purpose of the statute is to provide long-term benefits to a widow who remarries only if she is responsible for the care of decedent's children, and the children are still entitled to payments at the time of remarriage, is a persuasive one. Such an interpretation would mean that a widow who did not have responsibility for the care of decedent's children, or who had had no children with the decedent, or whose children by the decedent were no longer of an age to qualify to receive payments, would only be entitled to a lump sum settlement when she remarried. If, on the other hand, she was responsible for decedent's children, and they were still of an age which entitled them to compensation, she could continue receiving long-term benefits. Presumably this continued compensation would aid the widow and the children.

However, despite the appeal of respondents' argument, the plain language mandates that the widow be entitled to long-term benefits, up to 20 years or $250,000 regardless of whether the decedent's children are entrusted to her care, as long as those children are still receiving compensation benefits. As the Commission recognized, somewhat anomalous results could occur under this interpretation. For instance, a widow who does not have responsibility for the children can continue receiving weekly benefits just because the decedent's children are entitled to benefits at the time the widow remarries. On the other hand, a widow who has children by the decedent and who is still providing care for these children would be limited to a lump sum settlement when she remarries, if the children are no longer entitled to compensation at that time.

■ Nonetheless, the plain language of the statute must be given effect despite the possibility of an anomalous result, because there is no ambiguity in the statute and there is no express legislative purpose which indicates that to apply the statute as dictated by its plain language would be repugnant to the purpose of the statute. The appellate court cannot restrict or enlarge the plain meaning of an unambiguous statute. (*People v. McCray* (1983), 116 Ill. App. 3d 24, 26, 451 N.E.2d 985, 987.) A court may not declare that the legislature did not mean what the plain language imports. (*Hetterman v. Weingart* (1983), 120 Ill. App. 3d 683, 690, 458 N.E.2d 616, 621.) The court's only function, where the statutory language is unambiguous, is to enforce the law as enacted by the legislature. (*Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363.) While respondents have attempted to ascertain the legislative intent and then interpret the stat-

ute in a manner so as to effectuate the intent, rules of construction in interpreting a statute are to be used only where there is doubt as to the meaning of the statute. *Sickler v. National Dairy Products Corp.* (1977), 67 Ill. 2d 229, 235.

The case of *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, is cited by petitioner as controlling precedent. The facts in that case involved a widow who had children by the decedent and those children were still receiving benefits at the time of the widow's remarriage. None of the parties here dispute the right of a widow who has children by the decedent to qualify to continue receiving weekly compensation benefits after remarriage, as long as the children are still receiving benefits at that time. That case does not address the issue at hand, although some of the language in the opinion is favorable to petitioner's claim that she is entitled to continuing benefits since she did not remarry at a time when none of the decedent's children were entitled to support. That case is instructive as to the fact that the language of the provision at issue has been deemed to be clear and unambiguous by the Illinois Supreme Court.

The legislature could have provided that the lump sum settlement provision is applicable whenever the decedent did not leave surviving children in the care of the surviving spouse who, at the time of the widow's remarriage, are entitled to compensation benefits. The legislature did not so provide, and it is not the reviewing court's place to state what the legislature should have done. See *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, 193.

Petitioner also requests that this court adopt the trial court's findings in paragraphs 2a, 2b, and 2c of the trial court's order. The trial court found that the Commission's decision contained several errors, and the trial court corrected those errors. Specifically, the Industrial Commission decision stated that in the case of *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, the Illinois Supreme Court held that a widow who remarried was entitled to benefits until she died, subject to the 20 years "of" $250,000 limitation. Obviously, this is a simple typographical error since the opinion, in conformance with section 8(b)(4.2) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(b)(4.2)), limited recovery to the greater of $250,000 or 20 years of benefits.

The trial court also ordered deleted a portion of a phrase which stated that unless modified pursuant to certain changes in the status of the parties receiving compensation, the specific amount set forth in the order should be paid. The deletion involved the language which indicated that payments could be modified upon the further re-

marriage of Carla J. Stewart. The trial court found this language to be inconsistent with the Commission's decision that Carla J. Stewart was entitled to weekly benefits despite her remarriage. While we concur with the trial court's finding that this phrase should be deleted, we do so because nothing in the Workers' Compensation Act indicating that a widow's marriage subsequent to her first remarriage after decedent's death is meant to affect her compensation benefits. That is, the trial court obviously felt that this language referred to Carla J. Stewart's first remarriage following Dale K. Stewart's death. The word "further" might indicate that the Commission was referring to a marriage subsequent to petitioner's initial remarriage. This language was correctly deleted by the trial court.

■ Finally, the trial court found that the language of the Commission's order, which indicated that payments to Carla J. Stewart would cease upon payment of $250,000 was not correct. Since section 8(b)(4.2) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(b)(4.2)) orders payment to cease only when the payments have reached a total of $250,000 or have been issued for 20 years, whichever is greater, the Commission's order is amended to conform to the statutory limits.

The judgment of the circuit court of Vermilion County is reversed as to its application of the lump sum provisions of section 7(a) to petitioner. We affirm the balance of the judgment.

Affirmed in part, reversed in part.

BARRY, KASSERMAN, and McNAMARA, JJ., concur.

PRESIDING JUSTICE WEBBER, dissenting:

I cannot quarrel with the general principles of statutory construction set forth in the majority opinion. However, that opinion ignores another well-settled principle of law: if the construction placed upon a statute by a court leads to an absurd result, that construction will be avoided.

> "If upon examination the general meaning and object of the statute is inconsistent with the literal import of any clause or section, such clause or section must, if possible, be construed according to that purpose. However, to warrant changing the sense to accommodate it to a broader or narrower focus, the intention of the legislature must be clearly manifested.
>
> . Chancellor Kent made a classic observation that: 'In the exposition of a statute the intention of the lawmaker will prevail

over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context; from the occasion and necessity of the law; from the mischief felt and the remedy in view; and the intention should be taken or presumed according to what is consistent with reason and good discretion.' " 2A Sutherland, Statutory Construction sec. 46.05, at 92 (4th ed. 1984).

This principle has been followed in many Illinois cases. A sampling of these follows:

"The meaning attached to a statutory provision is derived from an examination of the language of the statute and its purpose." (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 510, 416 N.E.2d 247, 251.) "The principle often announced is that, if the language employed in a statute admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to the absurd result should be avoided." (*Childers v. Modglin* (1954), 2 Ill. App. 2d 292, 299, 119 N.E.2d 519.) "It is a rule of statutory construction that the legislature is presumed not to have intended an absurdity or injustice. [Citations.]" (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 128, 302 N.E.2d 64.)

"As pointed out in [*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585], the judiciary may not replace plain and concise statutory language with its own chimerical ideas concerning the 'spirit of the law.' We do not, however, interpret the *Franzese* case to require strict application of the letter of the law where to do so would yield absurd results, obviously contrary to the intent of the legislature." (*White v. Tucker* (1977), 53 Ill. App. 3d 862, 867, 369 N.E.2d 90.) "Also, a statute is not to be construed in a manner which results in absurdity." *Paset v. Old Orchard Bank & Trust Co.* (1978), 62 Ill. App. 3d 534, 539, 378 N.E.2d 1264.

I submit that such an absurdity has been reached in this case. The Commission used a more polite term, "anomalous," but "absurd" comes closer to meeting the case.

The majority argues that the statute is plain on its face. I agree, but I also maintain that ambiguity is of a dual nature: it may be either patent or latent. A patent ambiguity arises out of the words themselves—not the case here. A latent ambiguity arises out of the results of a literal application of the words.

The classic case of latent ambiguity can be found in the story (probably apocryphal) of an early statute in one of the western States.

It is said to have stated: "When two trains shall meet at a crossing, each shall stop and neither shall proceed until the other has passed by." Plain on its face? Yes. Absurd result? Equally yes. The intent of the statute? Obviously to avoid train wrecks, but just as obviously it obtained that result through an absurdity.

So, in the instant case, the intent of the statute is manifest. If the decedent leaves a family, that is, a widow with her children, that family is entitled to benefits until the death of the widow or until the youngest child (excluding those who may be incapacitated) reaches age 18, whichever shall last occur. In that situation the remarriage of the widow is immaterial if it occurs while a child of decedent is under age 18.

On the other hand, if the decedent leaves only a widow, without any of her children living, she is also entitled to benefits, but her remarriage will terminate lifetime benefits and she will be entitled to a two-year, lump-sum payment. She is a free agent, well able to calculate what she will lose by remarriage. In a sense, the two-year payment is analogous to the short-term rehabilitative maintenance often awarded under the Illinois Marriage and Dissolution of Marriage Act.

A widow's obligation to support her children does not terminate on her remarriage, while a childless widow would presumably be improving her situation by remarriage. This, it appears to me, was the bright line which the legislature drew in enacting section 7(a) of the Act. I cannot conceive that the legislature intended a windfall to a childless widow by the accident of the existence of children by a prior marriage of the decedent. Such a result can be obtained only by running all subparagraphs of section 7(a) through a meat grinder and ending up with a sort of legal sausage. It recalls Bismarck's aphorism: if you like law and sausage, you do not want to know too much about how either is made.

The result reached by the Commission and affirmed by the majority is an absurdity and should not be tolerated. If necessary, the legislature should look again at this situation.

I would affirm the trial court.