BRENDAN O'LOUGHLIN, Plaintiff-Appellant, v. THE VILLAGE OF RIVER FOREST, Defendant-Appellee.

First District (5th Division)   No. 1—02—0404

Opinion filed March 28, 2003.

John R. Roche, Jr., of Illinois Fraternal Order of Police Labor Council, of Western Springs, for appellant.

Jay S. Judge and Michael E. Kujawa, both of Judge, James & Kujawa, L.L.C., of Park Ridge, for appellee.

JUSTICE REID delivered the opinion of the court:

The plaintiff, Brendan O'Loughlin, appeals the trial court's grant of summary judgment to the defendant, the Village of River Forest, Illinois (River Forest), and the denial of his cross-motion for summary judgment. The sole issue raised on appeal is what is meant by the term "catastrophic injury" under the Illinois Public Safety Employee Benefits Act (820 ILCS 320/10(a) (West 1998)) (the Act). For the reasons that follow, we reverse the decision of the trial court.

## THE FACTS

O'Loughlin was employed as a police officer for River Forest in July 1988. On January 16, 1997, O'Loughlin injured his left shoulder while in the line of duty. The injury occurred when he slipped on ice and fell while approaching a suspected criminal's car during an investigation. O'Loughlin tore cartilage in his left shoulder joint and was required to undergo surgery and physical therapy. O'Loughlin returned to full duty in November 1997.

On January 16, 1998, O'Loughlin injured his left shoulder again while attempting to restrain a subject who was being placed under arrest. O'Loughlin again underwent surgery and physical therapy. However, as a result of the injury, O'Loughlin was unable to perform the duties of a police officer and consequently was granted a line-of-duty disability pension by the River Forest Police Pension Board on January 11, 1999.

On November 23, 1999, O'Loughlin filed a complaint wherein he requested that River Forest pay health insurance premiums for him and his family pursuant to the Act. O'Loughlin argued that he suffered a catastrophic injury, which made him eligible to receive insurance coverage under the Act.

On September 28, 2001, River Forest filed a motion for summary judgment. In its motion, River Forest argued that O'Loughlin's shoulder injury was not a catastrophic injury and consequently he was not entitled to receive benefits under the Act. On October 31, 2002, O'Loughlin filed a cross-motion for summary judgment wherein he argued that his shoulder injury was a catastrophic injury and that he was entitled to receive benefits under the Act. On January 10, 2002, the trial court granted River Forest's motion and denied O'Loughlin's. This appeal follows.

## ANALYSIS

O'Loughlin argues that the trial court erred when it denied his

motion for summary judgment and instead granted River Forest's motion for summary judgment. O'Loughlin maintains the trial court erred because the shoulder injury that he suffered qualifies as a "catastrophic injury" for purposes of benefits under the Act.

■ Although the use of summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). A motion for summary judgment is properly granted, therefore, only when the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). In considering a summary judgment motion, the court has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). In appeals from orders granting summary judgment, our review is *de novo. Travelers*, 197 Ill. 2d at 292.

■ Statutory construction is a matter of law and review is *de novo. People v. Richardson*, 196 Ill. 2d 225, 228 (2001); *Krohe v. City of Bloomington*, 329 Ill. App. 3d 1133, 1135 (2002), *aff'd*, 204 Ill. 2d 392 (2003), citing *People v. Slover*, 323 Ill. App. 3d 620, 623 (2001). The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *Richardson*, 196 Ill. 2d at 228. This inquiry appropriately begins with the language of the statute. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). The legislative intent is best ascertained by examining the language of the statute itself. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996); *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996).

The rules of statutory construction provide that in determining the intent of the legislature, courts must first look to the plain language of the statute and interpret the language according to its plain and ordinary meaning. *People v. Hicks*, 164 Ill. 2d 218, 222 (1995); *Billman v. Crown-Trygg Corp.*, 205 Ill. App. 3d 916, 923 (1990), citing *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143 (1985). A term that is undefined in a statute must be given its ordinary and properly understood meaning. *Villarreal v. Village of Schaumberg*, 325 Ill. App. 3d 1157, 1162 (2001), citing *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 477-78 (1998).

Where the words themselves are unambiguous, there is no need to resort to external aids of interpretation. *Hicks*, 164 Ill. 2d at 222; *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). The appellate court cannot

restrict or enlarge the plain meaning of an unambiguous statute. *Stewart v. Industrial Comm'n*, 135 Ill. App. 3d 661, 666 (1985), citing *People v. McCray*, 116 Ill. App. 3d 24, 26 (1983). A court may not declare that the legislature did not mean what the plain language imports. *Stewart*, 135 Ill. App. 3d at 666, citing *Hetterman v. Weingart*, 120 Ill. App. 3d 683, 690 (1983). The court's only function, where the statutory language is unambiguous, is to enforce the law as enacted by the legislature. *Stewart*, 135 Ill. App. 3d at 666, citing *Harvey Fireman's Ass'n v. City of Harvey*, 75 Ill. 2d 358, 363 (1979). Rules of construction in interpreting a statute are to be used only where there is doubt as to the meaning of the statute. *Stewart*, 135 Ill. App. 3d at 667, citing *Sickler v. National Dairy Products Corp.*, 67 Ill. 2d 229, 235 (1977).

When the language used is susceptible to more than one equally reasonable interpretation, the court may look to additional sources to determine the legislature's intent. *Hicks*, 164 Ill. 2d at 222. Where the language is ambiguous, it is appropriate to examine the legislative history. *People v. Boykin*, 94 Ill. 2d 138, 141 (1983), citing *People ex rel. Hanrahan v. White*, 52 Ill. 2d 70 (1972). "This court has previously looked to the debates on the floor of the General Assembly to ascertain the legislative intent underlying specific legislation." *Morel v. Coronet Insurance Co.*, 117 Ill. 2d 18, 24 (1987). Statements of the legislation's sponsor are particularly helpful in determining the intent of the statute. *Spinelli v. Immanuel Evangelical Lutheran Congregation, Inc.*, 144 Ill. App. 3d 325, 330 (1986).

■ The relevant section of the Act provides:

"§ 10. Required health coverage benefits.

(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. The term 'health insurance plan' does not include supplemental benefits that are not part of the basic group health insurance plan. If the injured employee subsequently dies, the employer shall continue to pay the entire health insurance premium for the surviving spouse until remarried and for the dependent children under the conditions established in this Section. ***

* * *

(b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act. Nothing in this Section shall be construed to limit health insurance coverage or pension benefits for which the officer, firefighter, spouse, or dependent children may otherwise be eligible." 820 ILCS 320/10 (West 1998).

O'Loughlin contends that the term "catastrophic injury" is an ambiguous term and that this court should look at the legislative history of the Act for guidance in determining its meaning. O'Loughlin asserts that when the legislative history of the Act is reviewed, the term "catastrophic injury" clearly refers to any injury that causes a police officer to take a line-of-duty disability pension. O'Loughlin relies on *Krohe* to support his proposition.

In *Krohe*, a firefighter was awarded a line-of-duty disability pension. He then filed a complaint for a declaratory judgment requesting the trial court to enter an order that he was entitled to have his family's insurance premiums paid by the defendant pursuant to section 10 of the Act. The trial court found that the plaintiff was entitled to receive benefits under the Act. On appeal, the defendant argued that the trial court erred in interpreting "catastrophic injury" under section 10 of the Act.

The *Krohe* court initially looked to the Act and determined that it did not define the term "catastrophic injury." The court then found that the intent of the language of the Act was uncertain and ambiguous and turned to its legislative history for guidance. *Krohe*, 329 Ill. App. 3d at 1136. In finding that the term "catastrophic injury" was ambiguous, the *Krohe* court only stated that "the term's uncertain definition renders the Act ambiguous." *Krohe*, 329 Ill. App. 3d at 1137.

When it reviewed the legislative history of the Act, the *Krohe* court relied on the following statement from Senator Donahue as being representative of the legislature's intended definition for the term "catastrophically injured": " 'I'd like to say for the sake of the record what we mean by catastrophically injured. What it means is that it is our intention to define "catastrophically injured" as a police officer or firefighter who, due to injuries, has been forced to take a line-of-duty disability.' " *Krohe*, 329 Ill. App. 3d at 1135, quoting 90th Ill. Gen. Assem., Senate Proceedings, November 14, 1997, at 136 (statements of Senator Donahue).

In response, River Forest contends that O'Loughlin's shoulder injury is not a catastrophic injury under the Act. Specifically, River Forest asserts that when one considers the usual, common and customary meaning of the term "catastrophic injury" without resorting to outside aids or sources, then O'Loughlin's shoulder injury cannot be considered catastrophic in nature. River Forest argues that the term "catastrophic injury" is not ambiguous and that there is no need to resort to outside aids such as legislative history to interpret its meaning. River Forest relies on *Villarreal* to support its argument.

In *Villarreal*, an on-duty police officer suffered a knee injury that caused him to receive a duty-related disability pension of 65% of his salary. The police officer then sought to receive benefits under the Act from the defendant and was denied. Subsequently, the police officer then brought an action seeking an order of *mandamus* requiring the defendant to provide him with health insurance coverage pursuant to the Act. The defendant filed a motion for summary judgment, which the trial court granted. On appeal, the police officer argued that he suffered a catastrophic injury and that he was eligible for benefits under the Act.

The *Villarreal* court first noted that "catastrophic injury" was not defined in the Act and sought to determine its ordinary meaning. After looking at several definitions of the word "catastrophe," the *Villarreal* court determined that the term "catastrophic injury" meant "financially ruinous" and as such that it was not an ambiguous term. *Villarreal*, 325 Ill. App. 3d at 1162-63.

The plaintiff in *Villarreal* was found to still be capable of engaging in a wide variety of occupations after his employment as a police officer. The court found that, "[i]n the context of the Act, the mere fact that plaintiff currently cannot perform the duties of a police officer does not qualify his injury as 'catastrophic.' " *Villarreal*, 325 Ill. App. 3d at 1163.

The *Villarreal* court then addressed the plaintiff's contention that the term "catastrophic injury" was intended to cover a range of injuries. In rejecting this argument, the court turned to the doctrine of *noscitur a sociis*. The court reviewed the Act and found that because the term "catastrophic injury" was followed by "or killed in the line of duty," "catastrophic injury" meant an injury of such serious consequences to make it just short of getting killed. *Villarreal*, 325 Ill. App. 3d at 1163-64.

The *Villarreal* court then reviewed the definition of "catastrophic injury" in other jurisdictions and found that those definitions were in accord with its decision. *Villarreal*, 325 Ill. App. 3d at 1164-65.

Here, the essential question to be answered is whether the term

"catastrophic injury" is ambiguous. The Act does not define the term. As such, the rules of statutory construction require us to first look to the plain language of the statute and interpret the language according to its plain and ordinary meaning. *Hicks*, 164 Ill. 2d at 222.

Following are several definitions of the word "catastrophe":

> "A notable disaster; a more serious calamity than might ordinarily be understood from the term 'casualty.' Utter or complete failure." Black's Law Dictionary 219 (6th ed. 1990).

> "A disastrous end, bringing overthrow or ruin. Any great and sudden calamity, disaster, or misfortune. A total or ignominious failure." Webster's New World College Dictionary (4th ed. 1999).

> "A sudden and widespread disaster. Any misfortune, mishap, or failure; fiasco. A final event or conclusion, usually an unfortunate one; a disastrous end." Random House Webster's Unabridged Dictionary 326 (2d ed. 2000).

In our view, these definitions of the word "catastrophe" do not leave a clear impression of what the term "catastrophic injury" means. The word that reoccurs throughout these different definitions is "disaster." That leaves us to ask, is it not a disaster for one to lose his ability to follow his chosen profession? Or is it only a disaster for one to never be able to work again? It is arguable that both are disasters.

The last definition of "catastrophe" stated that it is "[a] final event or conclusion, usually an unfortunate one; a disastrous end." Random House Webster's Unabridged Dictionary 326 (2d ed. 2000). Does an injury that causes one to be unable to follow a chosen profession qualify as a final event? Does the finality contemplated under the Act mean the complete inability for one to work as a police officer, or the complete inability for one to work? These questions in themselves suggest that the term "catastrophic injury" is ambiguous.

In *Villarreal* the court determined that "catastrophic injury" meant financially ruinous and as such was not an ambiguous term. *Villarreal*, 325 Ill. App. 3d at 1162-63. However, in coming to this conclusion, the *Villarreal* court took note of six different definitions of "catastrophe" and "catastrophic injury," four of which were from jurisdictions outside Illinois. In our view, this tends to show that there is no clear-cut definition for the term. We also note that the *Villarreal* court did not look to the legislative history of this state for guidance. This may be because it determined that the term was not ambiguous and consequently that there was no need to resort to extrinsic aids of statutory construction. Yet, that leaves us to ask, why did it consider the definition of the term from no less than four other jurisdictions if the term was not ambiguous?

We find "catastrophic injury" to be an ambiguous term, and as such, we will look to the legislative history for guidance.

Representative Tenhouse was the sponsor of House Bill 1347 (the Bill), which eventually became the Act. On April 14, 1997, Representative Tenhouse stated:

"1347 is a simple Bill. It simply provides that full-time law enforcement officers and firefighters that are killed or disabled in the line of duty, we're going to continue the health benefits for the officer's children and spouse." 90th Ill. Gen. Assem., House Proceedings, April 14, 1997, at 180 (statements of Representative Tenhouse).

Speaker Hannig then responded: "Is there any discussion?" 90th Ill. Gen. Assem., House Proceedings, April 14, 1997, at 180 (statement of Representative Hannig). No Representatives responded. A vote was taken, and the Bill passed with a constitutional majority of 113 to 4.

In the Senate, on May 16, 1997, Senator Donahue, who was the sponsor of the Bill in the Senate, when speaking about the Bill stated:

"And what this does is that it provides that for full-time law enforcement officers and firefighters that are killed or disabled in the line of duty shall continue the health benefits for the officer or the firefighter, their spouses and their children." 90th Ill. Gen. Assem., Senate Proceedings, May 16, 1997, at 192 (statements of Senator Donahue).

After Senator Donahue finished speaking, Presiding Officer, Senator Dudycz, asked, "Is there any discussion?" 90th Ill. Gen. Assem., Senate Proceedings, May 16, 1997, at 192 (statements of Senator Dudycz). There were no questions and the Bill passed with a 53 to 1 vote, with 1 voting present.

On August 1, 1997, House Bill 1347 was vetoed by the Governor. In response, on October 28, 1997, Representative Tenhouse stated:

"House Bill 1347 was a Bill that passed out of here with overwhelming support. Creates the Public Safety Employee Benefits Act. Provides that employers of full-time law enforcement and firefighters who are killed or disabled in the line of duty, shall continue health benefits for the officer o[r] firefighter and the spouse and children, thereof. *** I'm seeking total override of the Governor's Veto, and I stand ready to answer any questions." 90th Ill. Gen. Assem., House Proceedings, October 28, 1997, at 16 (statements of Representative Tenhouse).

Speaker Hannig responded, "On House Bill 1347, is there any discussion?" 90th Ill. Gen. Assem., House Proceedings, October 28, 1997, at 16 (statements of Representative Hannig). There were no questions posed, and the Bill passed with 115 voting yes and 1 voting no.

On November 14, 1997, before voting to override the Governor's veto in the Senate, Senator Donahue stated:

"I'd like to say for the sake of the record what we mean by

catastrophically injured. What it means is that *it is our intent to define 'catastrophically injured' as a police officer or firefighter who, due to injuries, has been forced to take a line-of-duty disability.*" (Emphasis added.) 90th Ill. Gen. Assem., Senate Proceedings, November 14, 1997, at 136 (statements of Senator Donahue).

In response, Presiding Officer, Senator Dudycz, stated, "Senator Donahue has moved that House Bill 1347 do pass, the veto of the Governor to the contrary notwithstanding. Any discussion?" 90th Ill. Gen. Assem., Senate Proceedings, November 14, 1997, at 136 (statements of Senator Dudycz). No questions or arguments were had and the Bill passed with a 58 to 1 vote.

Here, it is clear that the legislature of Illinois intended for the Act to cover police officers and firefighters who were forced to take a line-of-duty disability. Consequently, the trial court's decision is reversed.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is reversed.

Reversed.

CAMPBELL, P.J., and QUINN, J., concur.