PAUL R. HEPPERLY *et al.*, Plaintiffs and Counterdefendants and Appellants and Cross-Appellees, v. HENRY M. BOSCH *et al.*, Defendants and Counterplaintiffs and Appellees and Cross-Appellants.

Fourth District   No. 4—87—0857

Opinion filed July 26, 1988.

Robert M. Finch, of Finch Law Firm, of Urbana, for appellants.

Law Offices of Ora J. Baer II, of Champaign, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On June 1, 1984, plaintiffs Paul Hepperly and Julia Mignucci-Hepperly (sellers) filed a three-count complaint in the circuit court of Champaign County against defendants Henry and Margareta Bosch (buyers). Count I sought to regain possession of real estate sold by sellers to buyers under a contract for periodic payments. Counts II and III sought to recover (a) contract damages for installments owed and (b) for physical damage to the property. On June 18, 1984, the court entered an order determining sellers were entitled to possession of the property.

On September 19, 1985, sellers filed an amended three-count complaint with each count seeking the same relief as before. On March 14, 1986, buyers filed an answer and counterclaim. The latter alleged: (1) sellers accepted monthly payments from buyers beyond the date buyers were required to make a large final "balloon" payment on the contract and allowed buyers to pursue a loan commitment after declaring a forfeiture, thus waiving any default by buyers and estopping sellers from forfeiting the contract; (2) tender of payment to sellers after forfeiture was declared and possession was surrendered constituted satisfaction of sellers' claim; (3) buyers' tender and transfer of possession gave rise to a new contract and satisfaction of sellers'

claim; and (4) sellers were guilty of constructive fraud in retaining possession of the property, which had a value of $22,000, rather than accepting plaintiffs' timely tender of $17,310.73, the balance due on the contract, thus obtaining unjust enrichment.

Following a bench trial, the court entered an order on February 26, 1987, again ruling sellers were entitled to possession of the property but denying all other relief and ruling against buyers on their counterclaim. The court explained buyers were in default when sellers properly exercised their right to declare a forfeiture, and, thus, sellers were entitled to possession of the property and to retain payments paid as liquidated damages; however, sellers had made an election of remedies, barring recovery for the contract price under count II or for breach of the contract by damaging the property as alleged in count III. The court stated sellers would have had rights arising *dehors* the contract which would have allowed sellers to recover for damages inflicted on the property by buyers, but sellers had failed either to allege such damages or to prove them. The court also determined any tender by buyers of the amount due was untimely and no reformation of the contract had occurred. The court ruled in favor of sellers on the counterclaim.

On appeal, sellers make two contentions. First, they maintain their action, demanding possession of the property and retaining payments, was done only for the purpose of securing the obligations of the buyers to make the payments and performances required by the contract, and the court erred in ruling they had elected the remedy of forfeiting the contract. Secondly, sellers note amended count III was alleged in the alternative, and the circuit court had denied buyers' motion to dismiss count II, thus indicating count II was not barred by an election of remedies. The court then made sellers elect whether to proceed on count II or count III. Accordingly, sellers contend they refrained from introducing evidence under count III as to damages arising outside the terms of the contract because, pursuant to court order, they had elected not to sue on that count. Buyers maintain they proved the elements of their counterclaim and should have been permitted recovery.

The record reveals sellers and buyers entered into a contract for sale of real estate located in Champaign County on April 20, 1980. The contract provided for payment of a $20,000 purchase price partially in monthly installments up until May 1, 1983, when buyers were to pay the remaining balance in full in one balloon payment. The contract further contained a covenant and agreement by buyers to "maintain, repair and renovate the [premises] so as to keep it in a

reasonabl[y] good state of repair during the pendency of this contract." Finally, in case of default by buyers, the contract allowed the sellers to (1) collect the total amount agreed to be paid under the contract, or (2) terminate the contract, reenter and take possession of the premises, and retain payments made by buyers as liquidated damages sustained by sellers. In addition, if either party failed to perform any agreement or covenant required by them under the contract, the contract stated the defaulting party would be liable to the other for damages.

The record indicates buyers failed to make the balloon payment due May 1, 1983, as required by the contract. Sellers wrote buyers on May 9, 1983, notifying them of their default and demanding that they make payment immediately. Buyers informed sellers by letter dated May 18, 1983, they had applied for a loan, and buyers apparently continued making monthly payments to sellers in May, June, July, and August.

However, on August 11, 1983, sellers served upon buyers a document entitled "Demand for Possession, Notice of Default, and Notice of Intention to File Suit." In the document, the sellers quoted the forfeiture and reentry remedy as set forth in the default section of the real estate contract. It further stated:

"[T]he said Contract is hereby declared *terminated* due to your default in payment of $16,591.14 on May 1, 1983 and your failure to cure said default within 60 days as required by Section 10 of the contract. You are further notified that the [*sic*] Paul A. Hepperly and Julia Mignucci-Hepperly *will keep as liquidated damages all payments made on said Contract for Sale of Real Estate made by you to them to date* and that they shall hold you liable for their attorneys' fees expended in this matter.

You are further notified that, if you fail to peacefully surrender possession of the above described premises, Paul A. Hepperly and Julia Mignucci-Hepperly will file a proceeding against you under the provisions of Illinois Revised Statutes, Chapter 110, section 9—101 *et seq.* for possession, costs, and attorneys' fees." (Emphasis added.)

Buyers subsequently received a loan commitment on September 7, 1983, and tendered it to sellers on two occasions; sellers rejected both of these tenders. Sellers' evidence showed that, after sellers obtained possession under the June 18, 1984, order, they inspected the premises and found substantial damage had occurred during buyers' possession.

1022

■■ ■ The court properly found against sellers as to count II, where they sought to collect unpaid amounts due under the contract. Decisions in Illinois clearly hold that a vendor under an installment contract for the sale of real estate cannot both forfeit the contract, regaining the real estate, and sue under the contract for actual damages. Instead, he must make an election of the remedy he wishes to pursue. (*Herrington v. McCoy* (1982), 105 Ill. App. 3d 527, 434 N.E.2d 67.) Sellers' contention that they sought possession only for security purposes is not supported by any evidence. An August 11, 1983, notice they served on buyers clearly showed sellers' intent to exercise an option to terminate the contract, retain payments made as liquidated damages and, if possession was not surrendered, to bring an action in forcible entry and detainer (Ill. Rev. Stat. 1981, ch. 110, par. 9—101 *et seq.*). Sellers maintain they were seeking possession to protect the property from damages incurred by buyers, but the record does not show they knew of the damage until after they took possession.

Sellers' other contention is more complex. It concerns the action of the circuit court (1) in denying buyers' motion to dismiss count II, but (2) requiring sellers to elect between counts II and III, then (3) ruling count II was barred by sellers' election to forfeit the contract, and (4) finally ruling against sellers under count III partially because they failed to present proof of damages that would have been proper. Sellers maintain the court should have allowed the motion to dismiss count II if the court deemed it to be barred because of an election of remedies by sellers. They maintain they were unfairly prejudiced when, assuming count II was viable, they elected to proceed on that count and failed to put on evidence which would have supported count III. Sellers argue that reversible error resulted.

■■ We disagree with sellers for two reasons. First, we note that sellers' election of the remedy of forfeiture was not stated in buyers' motion to dismiss as a ground to dismiss count II. Thus, the circuit court's rulings denying the motion to dismiss as to that count but later denying relief under that count because of the election of remedy was not inconsistent. Secondly, as we will explain, we conclude sellers' allegations under count III were insufficient as a matter of law to permit recovery after sellers' election to declare forfeiture under the contract.

In *Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 464 N.E.2d 292, a summary judgment was entered against a seller of real estate who, after declaring a forfeiture of an installment contract and obtaining possession, sued the buyers for breach of the

contract in failing to make payments and keeping the premises in good condition and repair. A summary judgment to the defendant purchasers was affirmed on the theory the seller had elected the remedy of forfeiture and could not then sue on the contract. The contract contained provisions stating that declaration of a forfeiture made the contract null and void, but forfeiture was not the exclusive remedy, and other remedies could be exercised at the same time as that of forfeiture. The court stated:

"In order to give effect to both provisions, the contract must be construed so as to allow remedies contemporaneous with forfeiture other than those based on the contract itself, *e.g.*, negligent damage to the premises." *Benedetti*, 124 Ill. App. 3d at 506, 464 N.E.2d at 297.

The court then concluded the provisions of the complaint seeking recovery for failure to make repairs were clearly stated in terms of being violative of the contract and, thus, were barred by the election of the remedy of forfeiture.

Here, section 10 of the contract was headed "Default." It provided the seller with the right to forfeit and terminate the contract. It contained no express provision that other remedies could be exercised contemporaneous with a declaration of forfeiture, but it did state that "[i]n addition to any other default provision [of the contract, that,] in case of the failure of either the Sellers or Buyers to perform [that required by the contract,] the party in default shall be liable to the other party for damages." This would appear to be sufficiently similar to the language of *Benedetti* to authorize suits by a seller, who has declared a real estate installment contract forfeited, against the defaulting purchaser for negligently inflicted damage to the property during the possession of the purchaser.

■ Despite the similarities between this contract and that in *Benedetti*, we need not decide whether this contract allows for a cause of action by the sellers against the buyers, after forfeiture, brought on grounds not arising from the contract. Section 11 of the contract places on buyers the responsibility to "maintain, repair or renovate" the premises during the period of buyers' possession prior to full payment on the contract. Paragraph 12 of count III of the amended complaint, the paragraph upon which the cause of action is based, charges buyers with failure to "maintain, repair and renovate the premises." Some of the particular acts alleged in paragraph 12 which give rise to the failure to "maintain, repair, and renovate" are acts which could be deemed to be negligent, but the words negligent or negligence are not used. We determine that here, as in *Benedetti*,

the complaint is stated in language charging a violation of the contract's terms. It is an action which cannot be brought after forfeiture and, accordingly, count III failed for lack of allegation as well as lack of proof. Sellers were not prejudiced when the circuit court let count II stand and required an election by sellers as to whether to proceed on count II or count III.

Count III did request damages for loss of rent as a result of the condition of the premises after repossession. This was an element of damage for the alleged breach of the requirement that buyers "maintain, repair or renovate" the premises while in possession. The request was not for loss of rent between the time of declaration of forfeiture and the surrender of the premises, which is sometimes a proper element of recovery under section 9—201 of the Code of Civil Procedure. Ill. Rev. Stat. 1983, ch. 110, par. 9—201; see *Cala v. Gerami* (1985), 137 Ill. App. 3d 936, 484 N.E.2d 1199.

No error resulted from the circuit court's rulings in regard to the amended complaint.

Finally, we turn to buyers' cross-appeal from the circuit court's rejection of their counterclaim. Buyers initially argue that sellers' conduct in accepting monthly payments from buyers beyond the due date of the balloon payment and in allowing buyers to pursue a loan commitment resulted in a waiver of sellers' rights upon buyers' default. In the alternative, buyers contend sellers should have been equitably estopped from pursuing an action against them, since they relied upon sellers' actions to their detriment.

■ Sellers had notified buyers of their default on May 9, 1983, shortly after buyers failed to make the May 1 "balloon" payment. The acceptance of partial payments thereafter, before declaring forfeiture, was not an indication to buyers that the full payment was not required. No authority is cited for the proposition that a creditor waives a demand for the full amount due by accepting partial payments of the amount due. No such waiver was created here, and the additional element that sellers knew buyers were seeking a loan and had indicated no objection to the entity from which buyers sought the loan did not create estoppel against sellers.

■ Buyers next contend their tender of payment and transfer of possession of the premises to sellers constituted satisfaction and discharge of sellers' claims. To support their contention, buyers cite section 3—603 of the Uniform Commercial Code—Commercial Paper. (Ill. Rev. Stat. 1987, ch. 26, par. 3—603.) That section addresses discharge from liability on a negotiable instrument and is inapposite here. Moreover, we have held that, because of the forfeiture of the contract, buy-

ers had no further obligations on the contract. A rule that the forfeiture can be set aside at any time thereafter by tender of the amount due by the buyer would make no sense. Buyers cite no authority to support their position.

■ The trial court properly concluded the evidence failed to establish the parties had reformed their contract. The record shows that, shortly after sellers notified buyers about the delinquent balloon payment, buyers wrote sellers informing them of their application for a loan. Sellers responded with a letter, which stated: "My wife and I appreciate your efforts in seeking financing for the final overdue payment ***. The failure to receive the bulk of your payment which was due May 1, 1983, *has caused us severe financial handicap *** and for this reason we do not feel like renegotiating our contract ***.*" (Emphasis added.) This correspondence, in conjunction with sellers' subsequent service of notification of contract termination on buyers, does not indicate an intent by sellers to reform the contract.

■ Buyers' constructive fraud argument also lacks merit. They contend sellers defrauded them because they obtained possession of premises having a market value of $22,000 rather than accepting their tender of $17,310.73; this action, they allege, resulted in windfall profit to sellers of almost $5,000. Sellers' testimony indicated an appraisal showing the property was worth $21,500. No evidence of actual fraud was shown. The contract was one providing for a very low down payment, and buyers had been in possession for over three years and had made principal payments of less than $3,000 of the $20,000 purchase price. Even if the value of the house had appreciated by 7.5% during that time so that sellers would receive a house worth $21,500, rather than the balance of $17,310.73 owed on the contract, the circumstances of this case fall far short of giving rise to such unjust enrichment as to amount to constructive fraud or other grounds for equitable relief.

For the reasons stated, the decision of the trial court is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.